SHERRIFF-GOSLIN COMPANY v CAWOOD

Docket No. 78-1002. Submitted February 7, 1979, at Grand Rapids.— Decided July 9, 1979. Leave to appeal denied, 407 Mich —.

Plaintiff, Sherriff-Goslin Company, brought an action against David M. Cawood, manager of the plaintiff's business in Ann Arbor, Wolverine Insurance Company, the plaintiff's business insurer, and against Peoples State Bank in St. Joseph, Michigan, to recover funds lost when checks made out to the plaintiff were embezzled by Cawood and paid by the bank over endorsements forged by Cawood. Cawood had no authority to cash these checks or to deal with them in any way other than to pass them on to the plaintiff's home office. Cawood opened an account with defendant Peoples State Bank in the name of Society Products and the sums from the embezzled checks were deposited in this account. The checks were deposited with a stamped endorsement in blank with no restriction on further negotiation. No one at the bank knew of Cawood's position with the plaintiff or even inquired about these checks. During the course of Cawood's scheme, the bank credited his account with and collected over $100,000 which belonged to the plaintiff. When the scheme was discovered, no money was left in the account.

The theory advanced against the bank was that by cashing the checks, over a forged endorsement in blank, the bank had converted Sherriff-Goslin's money.

Summary judgment was entered for the plaintiff against Peoples State Bank, Calhoun Circuit Court, Creighton R. Coleman, J. Defendant Peoples State Bank appeals, contending that under the Uniform Commercial Code it is not liable in a direct suit by the payee. *Held:*

1. The Uniform Commercial Code provides no defense for the collecting bank in a suit by the payee of an instrument in this type of fact situation.

2. The trial court based its judgment on the fact that even if

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Banks § 635.
[2] 29 Am Jur 2d, Evidence § 98.

certain provisions of the UCC did apply, providing certain defenses to the bank, the bank did not act "in accordance with the reasonable commercial standards applicable to the business" and, for this reason, could be held liable. This alternative ground relied upon by the trial court is also a proper basis for the trial court's ruling.

Affirmed.

1. BANKS AND BANKING — CONVERSION OF INSTRUMENT — UNIFORM COMMERCIAL CODE — FORGED INSTRUMENT — STATUTES.

A section of the Uniform Commercial Code dealing with conversion of an instrument provides no defense for a collecting bank in an action for conversion of an instrument brought by the payee where the bank has paid out funds to another party over a forged endorsement (MCL 440.3419; MSA 19.3419).

2. BANKS AND BANKING — CONVERSION OF INSTRUMENT — FORGED INSTRUMENT — REASONABLE COMMERCIAL STANDARDS — JUDICIAL NOTICE.

A trial court in an action for conversion by a payee on negotiable instruments against a depository bank for funds paid out over a forged endorsement on the instruments was justified in taking judicial notice of the depository bank's lack of compliance with reasonable commercial standards where 1) over 300 checks were embezzled and the endorsements on them forged by the manager of one of plaintiff's branch offices, 2) the forger had no authority to cash the checks or to deal with them in any way except to pass them on to the plaintiff's home office, 3) the forger opened an account with the defendant bank, in a city 130 miles from the branch office managed by the forger, under an assumed name and the sums from the embezzled checks were deposited in this account, 4) the checks were deposited with a stamped endorsement in blank with no restriction on further negotiation, 5) no one at the bank knew of the forger's position with the plaintiff or even inquired about the checks, 6) the value of the embezzled checks deposited into the forger's account, from which he alone was authorized to draw funds, exceeded $100,000, and 7) the only other activity in this account amounted to less than $1,500.

*Sabin & Humbarger,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Bruce M. Bieneman* and *Kenneth L. Block),* for defendant Peoples State Bank.

Before: D. F. WALSH, P.J., and J. H. GILLIS and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiff Sherriff-Goslin Company brought this suit to recover for amounts lost when checks made out to it were embezzled and paid over a forged endorsement. The trial court entered a summary judgment, under GCR 117.2(3), against the defendant Peoples State Bank and it appeals. We affirm.

From April 1, 1973, until sometime in July of 1974, defendant David Cawood was the branch manager of plaintiff's business in Ann Arbor. While serving in this capacity Cawood received checks from plaintiff's customers drawn on various banks. Cawood had no authority to cash these checks or deal with them in any way other than to pass them on to the home office. However, the checks were diverted from plaintiff and the sum deposited in an account controlled by Cawood when he used a stamp to endorse the checks in blank and without restriction on further negotiation.

Cawood had an account with Peoples State Bank in St. Joseph, Michigan, in the name of Society Products. Cawood was the only person authorized to draw money from the Society Products account. No one at the bank knew of Cawood's position with plaintiff or ever inquired about these checks on which plaintiff was the payee. During the course of Cawood's scheme, Peoples State Bank credited his account with and collected over $100,-000 which properly belonged to plaintiff. When the embezzlement was discovered no money was left in Cawood's account at Peoples State Bank.

Plaintiff sued Cawood, their own business insurer and Peoples State Bank to recover the sums

lost. The theory advanced against the bank was that by cashing the checks on which Sherriff-Goslin was payee over the stamped endorsement in blank, which was in fact a forgery, it had converted Sherriff-Goslin's money. UCC 3-419, MCL 440.3419; MSA 19.3419.

Whether a payee may bring a direct action against a collecting bank in conversion for funds paid out over a forged endorsement under the UCC has not reached this Court before this case.[1] Before adoption of the UCC it was almost universally accepted that a payee, subject to certain defenses, could maintain a direct action on one theory or another against a collecting bank or other entity which cashed a check bearing a forged or unauthorized endorsement of the payee and procured payment from the drawee. Anno: *Right of check owner to recover against one cashing it on forged or unauthorized indorsement and procuring payment by drawee,* 100 ALR2d 670, § 2, p 672. Michigan allowed such suits on a conversion theory. See, *e.g., Kaufman v State Savings Bank,* 151 Mich 65; 114 NW 863; 123 Am S Rep 259; 18 LRA NS 630 (1908).

The bank contends that it is not liable in a direct suit by the payee and points to UCC 3-419 for support. In relevant part, that section provides:

"(1) An instrument is converted when

\* \* \*

"(c) it is paid on a forged indorsement.

\* \* \*

"(3) Subject to the provisions of this Act concerning restrictive indorsements a representative, including a

---

[1] *Continental Casualty Co v Huron Valley National Bank,* 85 Mich App 319; 271 NW2d 218 (1978), presented the same factual pattern but the majority rested its decision on an issue relating to the statute of limitations. That issue has not been raised in this case.

depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

The bank's contention has not been successful in other jurisdictions. Courts which have considered the question have not construed § 3-419(3) in a way which protects a collecting bank in a normal check cashing transaction such as that presented by the facts of this case.

In one line of cases, represented by *Ervin v Dauphin Deposit Trust Co,* 38 Pa D&C 2d 473; 3 UCC Rep Serv 311 (1965), and *Tubin v Rabin,* 389 F Supp 787 (ND Tex, 1974), *aff'd* 533 F2d 255 (CA 5, 1976),[2] the collecting bank has been found not to be a "representative" within the meaning of this section. This interpretation is based on the official comments to the code and their reference to prior law involving security brokers dealing with bearer bonds.

Other courts have analyzed the relationship between the forger and the collecting bank and concluded that when the collecting bank pays out funds it has collected from the drawee bank it is paying out its own funds and not the proceeds of the check. Thus when the true owner brings a direct suit the collecting bank still has the "proceeds" of the stolen check in its hands and is liable to that extent. The commencement of the present action ratifies the collection by the depository bank but does not ratify the act of paying the

---

[2] See also, *Salsman v National Community Bank of Rutherford,* 102 NJ Super 482; 246 A2d 162 (1968), *aff'd* 105 NJ Super 164; 251 A2d 460 (1969).

amount collected to the wrong person. *Cooper v Union Bank,* 9 Cal 3d 371; 107 Cal Rptr 1; 507 P2d 609 (1973), *Sonnenberg v Manufacturers Hanover Trust Co,* 87 Misc 2d 202; 383 NYS2d 863 (1976).

Some courts have recognized the weight of this authority and the code's purpose to "make uniform the law among the various jurisdictions", UCC 1-102(2)(c), MCL 440.1102(2)(c); MSA 19.1102(2)(c), and accepted the results. *Mott Grain Co v First National Bank & Trust Co of Bismarck,* 259 NW2d 667 (ND, 1977).[3]

While this body of case law has not developed without criticism,[4] the reasons which support it are clearly ascertainable. This case is a good example of the most important of these reasons. The bank here accepted for collection some 300 checks drawn by various entities on many different banks. If the payee cannot sue the depository bank directly it would be necessary to sue either the drawee bank under 3-419(1)(c) or the drawer under 3-804.[5] Thus 300 lawsuits might be required where one will do under the prevailing construction of 3-419(3). But, even then the matter would not be closed. When the drawee bank or drawer loses the suit to the payee, they in turn pass the loss to the first party to deal with the forger, here Peoples State Bank, under the warranty provisions of 3-417.[6] Other courts have recognized the code's allo-

---

[3] There is a fourth group of cases which seem to have completely ignored the possible impact of 3-419(3) and simply carried pre-code law on conversion liability forward to a post-code law situation. See, e.g., *Equipment Distributors, Inc v Charter Oak Bank & Trust Co,* 34 Conn Supp 606; 379 A2d 682 (1977), *DoAll Dallas Co v Trinity National Bank of Dallas,* 498 SW2d 396 (Tex Civ App, 1973).

[4] See, e.g., White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 15-4, pp 504-505, Tolley, Comment, *Depository Bank Liability Under § 3-419(3) of the Uniform Commercial Code,* 31 Wash and Lee L Rev 676 (1974).

[5] MCL 440.3804; MSA 19.3804.

[6] MCL 440.3417; MSA 19.3417.

cation of the ultimate loss in this factual pattern, even in suits brought against the drawer or drawee bank. *Mississippi Bank & Trust Co v County Supplies & Diesel Service, Inc,* 253 So 2d 828 (Miss, 1971), *Maddox v First Westroads Bank,* 199 Neb 81; 256 NW2d 647 (1977).

We agree with the result reached in the cases cited above and affirm the court's finding that 3-419(3) provides no defense for the collecting bank in a suit by the true owner of the instrument in this type of fact situation.

The trial court based its holding on an alternative ground which should also be affirmed. In the view of the court below, even if the depository bank fell within the first phrase of 3-419(3) it would still not be absolved from liability because it did not act "in accordance with the reasonable commercial standards applicable to the business". Defendant bank argues this finding could not be made on the present record.

We cannot accept the bank's argument. The undisputed facts are that Peoples State Bank, located in St. Joseph, some 130 miles from Ann Arbor, handled over 300 checks made out to a corporate payee and endorsed only by a rubber stamp. The value of the checks exceeded $100,000. The only activity in this account, other than checks payable to Sherriff-Goslin, amounted to less than $1,500. No one at the bank knew that Cawood worked for Sherriff-Goslin and certainly no one ever asked by what authority he was dealing with these checks. The bank simply failed to make any inquiry into these various transactions.

Under the circumstances the court was justified in taking judicial notice of the lack of compliance with reasonable commercial standards. Many courts have found a lack of compliance with such

standards on similar facts. See, *e.g., Gresham State Bank v O & K Construction Co,* 231 Or 106; 370 P2d 726; 372 P2d 187; 100 ALR2d 654 (1962), *Atlas Building Supply Co, Inc v First Independent Bank of Vancouver,* 15 Wash App 367; 550 P2d 26 (1976), *Von Gohren v Pacific National Bank of Washington,* 8 Wash App 245; 505 P2d 467 (1973), *Mott Grain Co v First National Bank & Trust Company of Bismark, supra, Belmar Trucking Corp v American Trust Co,* 65 Misc 2d 31; 316 NYS2d 247 (1970). We recognize, as these other courts have, that when a corporation is the payee of a check, that corporation usually deposits the check in its account rather than negotiating it in blank to a third person. The bank had a duty to inquire before accepting these checks. Since it did not inquire and paid the checks over forged endorsements, it must bear the ultimate loss.

Peoples State Bank contends on a number of other issues that it should be allowed to present evidence of several possible code defenses. These sections were never raised in any pleading and are mentioned only in passing in the brief in opposition to the motion for summary judgment. The record does not show that an answer to the motion for summary judgment was ever filed. From review of the other documents in the file there is no reason to believe that these assertions could be factually supported. We consider the defenses waived. GCR 1963, 111.3, 111.7.

The judgment of the circuit court is affirmed. Costs to appellee.