**MATCO TOOLS CORPORATION, Plaintiff,**

v.

**PONTIAC STATE BANK, David Cox, Clotilde Cox, The Travelers Indemnity Co. and Connecticut Bank & Trust, Defendants.**

**No. 84–CV–2972–DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 1, 1985.

John R. Mann, III, of Fildew, Hinks, Gilbridge, Miller & Todd, Detroit, Mich., for plaintiff.

Rockwood W. Bullard, Lyon, Colbert & Bullard, Rochester, Mich., for defendants David & Clotilde Cox.

Daniel J. Bernard of Booth, Patterson, Lee, Karlstrom & Steckling, Pontiac, Mich., for Connecticut Bank and Pontiac State Bank.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

Matco Tools Corporation has brought this action against several defendants on various theories. In the portion of the lawsuit presently before the court, Matco, as the named payee on a negotiable instrument, seeks to recover the value of the instrument from Pontiac State Bank, as depository bank, under warranty and conversion theories, for accepting the instrument for deposit over an allegedly forged endorsement. Both parties have moved for summary judgment.

The material facts are largely undisputed. David Cox was a distributor of Matco Tools. Cox purchased the tools from Matco on credit and assigned to Matco a security interest in the tools and their proceeds. Cox did business under the assumed name of DMC Enterprises.

On August 16, 1980, Cox opened a commercial checking account at Pontiac State Bank under the name DMC Enterprises. At the time he opened the account, Cox presented Pontiac State Bank with a letter from Matco's Controller. That letter, on Matco Tools stationery, states:

To Whom It May Concern:

In the normal course of business, an authorized Matco Tools Distributor, who is an independent businessman, will receive checks from his customers designating the payee as Matco, Matco Tools, Matco Man, Tool Man, etc. These checks

are rightfully payable to the Distributor for amounts due him. We hereby authorize him to endorse these checks for deposit as the intended payee.

Any questions regarding the above should be directed to my attention.

Very truly yours,

MATCO TOOLS CORPORATION

/s/

Dale Gillespie

Controller

Cox also obtained an endorsement stamp which states:

FOR DEPOSIT ONLY

Pay to the Order of

PONTIAC STATE BANK

MATCO TOOLS

DMC ENTERPRISES,

AUTHORIZED DISTRIBUTOR

3160–364–5

Pontiac State Bank provided Cox with deposit slips which stated "DMC Enterprises, authorized Matco Tool Distributor," and which were imprinted with the Matco Symbol.

In May 1983, a quantity of Cox's tools were stolen. Cox's insurer, The Travelers Indemnity Company, sent a settlement check in the amount of $24,960.71 to Cox. The check was payable to "David M. Cox and Matco Tools Corp." Cox endorsed the check with his own signature and the deposit stamp and deposited the check into the DMC Enterprises account at Pontiac State Bank. The money deposited was later withdrawn by Cox. Matco, named as a loss payee on the Travelers insurance policy, never received any proceeds from the insurance settlement.

Matco alleges that Cox forged Matco's endorsement on the check. Matco seeks to recover the value of the check from Pontiac State Bank under warranty and conversion theories. Matco contends that Pontiac State Bank is liable for breaching a warranty that all endorsements are authorized. UCC §§ 3–417(2)(b), 4–207(2)(b) (MCLA §§ 440.3417(2)(b), 440.4207(2)(b) ). Matco also contends that Pontiac State Bank is liable for converting the check under UCC § 3–419(1)(c) (MCLA § 440.3419(1)(c) ).

*Warranty*

The Uniform Commercial Code imposes certain implied warranties in connection with negotiable instruments. Matco relies upon the implied warranties imposed by sections 3–417(2)(b) and 4–207(2)(b). Section 3–417(2)(b) provides:

> (2) Any person who transfers an instrument and receives consideration warrants to his transferee and if the transfer is by indorsement to any subsequent holder who takes the instrument in good faith that
>
> . . . .
>
> (b) all signatures are genuine or authorized.

MCLA § 440.3417. Section 4–207(2)(b) provides:

> (2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that
>
> . . . .
>
> (b) all signatures are genuine or authorized.

MCLA § 440.4207.

■ These sections have no application here. Pontiac State Bank was the depository bank in regard to the check from Travelers. Matco was one of two named payees on the check. Neither section 3–417 nor section 4–207 create any warranties which run expressly to a payee from a depository bank. The only case which addresses the issue holds that a payee may not maintain an action against the depository bank under either section 3–417 or 4–207. *See National Surety Corp. v. Citizens State Bank,* 41 Colo.App. 580, 583, 593 P.2d 362, 365 (1978), *aff'd,* 199 Colo. 497, 612 P.2d 70 (1980). No authority holds that a payee may maintain an action

against a depository bank under these sections. This court will not so hold.

Since no implied warranties imposed by the UCC run to Matco, Matco cannot maintain any breach of warranty action. For this reason, the court will grant Pontiac State Bank's motion for summary judgment as to plaintiff's breach of warranty claim.

### Conversion

■ Both the Uniform Commercial Code and the common law of Michigan permit a direct action by a payee against a depository or collecting bank which forwarded an instrument bearing a forged endorsement for collection. For the common law rule, see *Brown v. People's State Bank,* 170 Mich. 416, 136 N.W. 506 (1912); *Kaufman v. State Savings Bank,* 151 Mich. 65, 114 N.W. 863 (1908). For the UCC rule, see *Sherriff-Goslin Co. v. Cawood,* 91 Mich. App. 204, 283 N.W.2d 691 (1979); *Grieshaber v. Michigan National Bank of Detroit,* 18 UCC Rep.Serv. 1248 (Detroit Common Pleas 1976).

The relevant UCC provision is section 3-419, which provides in pertinent part:

(1) An instrument is converted when

. . . .

(c) it is paid on a forged indorsement.

. . . .

(3) Subject to the provisions of this act concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

MCLA § 440.3419. The first issue under this section is whether Pontiac State Bank paid the instrument over a forged endorsement. If so, the second issue is whether Pontiac State Bank is protected from liability by subsection (3) because it acted "in good faith and in accordance with the rea-

sonable commercial standards." *See Grosberg v. Michigan Nat'l Bank,* 420 Mich. 707, 714, 362 N.W.2d 715 (1984).

### A. Forged Endorsement

The parties seriously dispute whether any endorsement on the check can be considered "forged." Matco clearly gave Cox authority to endorse checks from customers. Travelers, however, was not a customer of Cox.

Section 3-401(2) provides:

A signature is made by use of any name, including any trade name or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature.

MCLA § 440.3401(2). Here, the check bore an endorsement stamp bearing the words "Matco Tools." This suffices as Matco's signature under section 3-401(2). Section 1-201(43) defines an unauthorized signature to mean "one made without actual, implied or apparent authority and includes a forgery." MCLA § 440.1201(43). Conversely, a signature which is authorized is not a forgery. MCLA § 440.3404(1); *Grosberg v. Michigan Nat'l Bank,* 420 Mich. at 714, 362 N.W.2d 715. It is clear that Cox had no express authority to endorse the check on behalf of Matco because Travelers, the drawer of the check, was not a customer of Cox.

■ Pontiac State Bank contends that it had no knowledge as to whether the Travelers check came from one of Cox's customers, that nothing on the face of the check put it on notice that Cox was acting beyond the scope of his authority, and that it had no duty to inquire into the underlying transaction. This argument appears relevant not to the issue of whether there was a forgery, but to the issue of whether Pontiac State Bank acted "in good faith and in accordance with the reasonable commercial standards." The court holds that Pontiac State Bank deposited the check in the account of DMC Enterprises over the unauthorized endorsement of Matco.

### B. *Good Faith/Reasonable Commercial Standards Defense*

Pontiac State Bank raises the defense set forth in subsection (3) of section 3–419 and contends that it cannot be held liable because it no longer has any proceeds from the check in its possession and because it dealt with the check "in good faith and in accordance with the reasonable commercial standards." The threshold issue is whether Pontiac State, being the depository bank in the transaction, can assert the defense provided by section 3–419(3). Despite the unambiguous language of section 3–419(3), the caselaw interpreting the section constitutes one of the more bizarre chapters of the law of commercial paper.[1]

The precise language of section 3–419(3), though already quoted, bears repeating:

> Subject to the provisions of this act concerning indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

MCLA § 440.3419(3).

Although this subsection appears to provide a defense to "a representative, including a depository or collecting bank," numerous courts have held that subsection (3) does not apply to suits by payees, such as Matco, against depository or collecting banks, such as Pontiac State Bank, for payment of checks bearing forged endorsements. There are two theories by which courts have reached this result.

One line of cases has held that a depository or collecting bank cannot be a "representative" within the meaning of this sub-

section. These courts have reasoned that section 4–201 makes a collecting bank an agent only of the owner of the instrument[2] and not of the forger/depositor; therefore, the bank is not acting as a representative when it deposits or pays an instrument over a forged endorsement. These courts have also relied upon the common-law principle that a bank's agency status is brought to an end upon collection of the paper. *See Tubin v. Rabin,* 389 F.Supp. 787, 789–90 (N.D.Tex.1974), *aff'd,* 533 F.2d 255 (5th Cir. 1976); *Grieshaber v. Michigan Nat'l Bank of Detroit,* 18 UCC Rep.Serv. 1248, 1251–56 (Mich.C.P.1976); *Ervin v. Dauphin Deposit Trust Co.,* 38 Pa.D. & C.2d 473, 481–82, 3 UCC Rep.Serv. 311, 318–19 (Pa.C.P.1965). This reasoning flies in the face of the language of subsection (3), which expressly provides that a representative can be a person (or bank) "who has ... dealt with an instrument ... on behalf on one who is not the true owner...."

The second line of cases is equally doubtful. These courts have concluded that subsection (3) can never apply because the depository bank will always retain all the proceeds in its hands regardless of whether the forged instrument was cashed or deposited and then withdrawn. When a bank cashes a check, the reasoning goes, it pays out its own funds and retains the "proceeds" in its own hands. When the true owner brings an action against the depository bank to recover such proceeds, the owner ratifies the collection by the depository bank but does not ratify the payment of funds to the forger. *See Cooper v. Union Bank,* 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *Ervin v. Dauphin Deposit Trust Co.,* 38 Pa.D. & C.2d at 481–82, 3 UCC Rep.Serv. at 319. Such reasoning defies common sense.

The Michigan Court of Appeals, in *Sherriff-Goslin Co. v. Cawood,* 91 Mich.App.

---

**1.** According to Professors White and Summers, "[T]he courts have taken up section 3–419(3), and what they have done to it shouldn't happen to a dog." J. White & R. Summers, *Uniform Commercial Code* § 15–4, at 591 (2d ed. 1980).

**2.** Section 4–201(1) provides in pertinent part:

Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final ... the bank is an agent or sub-agent of the owner of the item and any settlement given for that item is provisional....

204, 210, 283 N.W.2d 691 (1979), held that section 3–419(3) provides no defense for the depository/collecting bank in a suit by the owner of an instrument cashed or deposited over a forged endorsement. The court discussed the various theories by which other courts have reached the same result, but did not state which theory it was relying on. While recognizing that the body of caselaw discussed above has been criticized for its failure to follow the language of the statute, the court of appeals was persuaded by undeniably good policy reasons which support the result.

> [T]he reasons which support [this body of caselaw] are clearly ascertainable. This case is a good example of the most important of these reasons. The bank here accepted for collection some 300 checks drawn by various entities on many different banks. If the payee cannot sue the depository bank directly it would be necessary to sue either the drawee bank under 3–419(1)(c) or the drawer under 3–804. Thus 300 lawsuits might be required where one will do under the prevailing contruction of 3–419(3). But, even then the matter would not be closed. When the drawee bank or drawer loses the suit to the payee, they in turn pass the loss to the first party to deal with the forger … under the warranty provisions of 3–417.

91 Mich.App. at 209–10, 283 N.W.2d 691 (footnotes omitted).

More recent decisions from other states, however, cast doubt on the Michigan court's characterization of denial of the defense as the prevailing construction of section 3–419(3). Five more recent decisions, including three by state supreme courts, hold that any construction of section 3–419(3) which denies its application to depository banks, while perhaps based on good policy reasons, violates the clear language of the section. *See Jackson Vitrified China Co. v. People's American Nat'l Bank of North Miami,* 388 So.2d 1059, 1062–63 (Fla.App.1980); *Denn v. First State Bank of Spring Lake Park,* 316 N.W.2d 532, 537 (Minn.1982); *Hydroflo Corp. v. First Nat'l Bank of Omaha,* 217 Neb. 20, 26, 349 N.W.2d 615, 619 (1984); *Knesz v. Central Jersey Bank and Trust Co.,* 97 N.J. 1, 18, 477 A.2d 806, 815 (1984); *Stevens-Daniels Corp. v. Commercial Nat'l Bank,* 673 S.W.2d 651, 653 (Tex.App. 1984). The rationale of these decisions was succinctly stated by the New Jersey Supreme Court in *Knesz* :

> We are in consequence not persuaded that the underlying policy served by the common law—the recognition of a single direct action by an owner-payee against the depository or collecting bank and the avoidance of circuitous or chain litigation—overrides the plain terms of § 3–419(3). That policy was undoubtedly known to the drafters of the Code. It was presumably within their contemplation when § 3–419(3) was inserted granting immunity to these banks. We are constrained to adhere to the choice made by the Legisin its enactment. It has not been shown that this choice leads to intolerable or absurd results, a factor that would have given us pause in applying § 3–419(3) in accordance with its terms.[5]

> [5] It is possible that the burdensome circuitous litigation deplored by many commentators may be mitigated today. The "circuity argument" has been criticized as being exaggerated and inconsequential in the modern era of long-arm jurisdiction, negotiated settlements, and liberal rules of interpleader…. In addition, foreclosing a direct suit against a depository bank and, instead, forcing the payee to sue his drawer or the drawee bank preserves in some instances the timely presentation of appropriate defenses that would have been unavailable to a depository bank, such as that of the drawer's negligence in causing or detecting the forgery.

97 N.J. at 17–18, 477 A.2d at 814 (citations omitted).

In this diversity action, the court is bound by the doctrine of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the law as announced by the Michigan Supreme Court. The court is not bound to apply a decision of the Michigan Court of Appeals if it determines that the Michigan Supreme Court would decide otherwise. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776,

1782, 18 L.Ed.2d 886 (1967); *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4507, at 95 (1982). The Michigan Supreme Court has not passed on the issue at bar. In view of the foregoing authority, this court is convinced that the Michigan Supreme Court would not follow the decision in *Sherriff-Goslin*, but would hold that section 3–419(3) does provide a defense to a depository bank such as Pontiac State Bank. This court, therefore, holds that Pontiac State Bank can assert the good faith/reasonable commercial standards defense provided by section 3–419(3).

The next issue before the court is whether Pontiac State Bank, in accepting the check for deposit, acted "in good faith and in accordance with the reasonable commercial standards." MCLA § 440.3419(3). If Pontiac State Bank acted in good faith and in accordance with reasonable commercial standards, then Matco cannot recover against it on a conversion theory. In view of this court's rejection of the perpetually retained proceeds theory, there can be no dispute that Pontiac State Bank no longer has any of the proceeds of the check in its hands.

Good faith and adherence to reasonable commercial standards are separate elements of the defense provided by section 3–419(3). *See Coulter Electronics, Inc. v. Commercial Bank of Cobb County*, 727 F.2d 1078, 1079 n. 5 (11th Cir.1984); *Siegel Trading Co. v. Coral Ridge Nat'l Bank*, 328 So.2d 476, 478 (Fla.App.1976); 6 R. Anderson, *Uniform Commercial Code* § 3–419:35, at 435–36 (3d ed. 1984). Good faith is defined in the Code as "honesty in fact in the conduct of the transaction concerned." MCLA § 440.1202(19). Matco has not alleged that Pontiac State Bank failed to act in good faith, nor could the court so find since there is no evidence of dishonesty on the part of Pontiac State Bank. The only issue concerning the asserted defense, therefore, is whether Pontiac State Bank acted in accordance with reasonable commercial standards.

Matco, relying on the principle that it is usually not commercially reasonable for a bank to accept for deposit into an individual account a check naming a corporation as a payee, asks this court to take judicial notice that Pontiac State Bank did not act in accordance with reasonable commercial standards. For this general principle, see, e.g., *D & G Equipment Co., Inc. v. First National Bank of Greencastle, Pa.*, 764 F.2d 950, 956 (3d Cir.1985); *Hermetic Refrigeration Co., Inc. v. Central Valley Nat. Bank, Inc.*, 493 F.2d 476 (9th Cir.1974); *Aetna Cas. & Sur. Co. v. Hepler State Bank*, 6 Kan.App.2d 543, 550, 630 P.2d 721, 728 (1981); *National Bank of Georgia v. Refrigerated Transport Co.*, 147 Ga.App. 240, 244–45, 248 S.E.2d 496, 499–500 (1978); *Grosberg v. Michigan Nat'l Bank Oakland*, 420 Mich. 707, 718, 362 N.W.2d 715 (1984); *Sherriff-Goslin Co. v. Cawood*, 91 Mich.App. at 211, 283 N.W.2d 691; *Belmar Trucking Corp. v. American Trust Co.*, 65 Misc.2d 31, 34, 316 N.Y.S.2d 247, 251 (N.Y. Civ.Ct.1970). These cases are distinguishable from the present case, however, in that they involved forgeries of the corporate payees' endorsements or endorsements by persons with *no* authority to endorse on behalf of the corporate payee. Here, Cox had authority to endorse some checks, i.e., checks from customers, for deposit into the DMC Enterprises account. The court can locate no authority by which the court can determine as a matter of law the commercial reasonableness of Pontiac State Bank's conduct in this case. *See Grosberg v. Michigan Nat'l Bank Oakland*, 113 Mich.App. 610, 618, 318 N.W.2d 490 (1982), *aff'd on other grounds*, 420 Mich. 707, 362 N.W.2d 715 (1984).

■ It is undisputed that Cox had limited authority to endorse some checks payable to Matco and deposit them into the account of DMC Enterprises. It is also undisputed that the Travelers check was endorsed by Cox and stamped with the name of "Matco Tools/DMC Enterprises/Authorized Distributor." Although Cox only had authority to endorse checks pay-

able to Matco if such checks were from customers, Pontiac State Bank's personnel were unaware of whether Travelers was a customer of Matco. They accepted the check for deposit without inquiring as to Cox's authority to endorse the Travelers check. The assistant manager of the Pontiac State Bank Walled Lake branch testified at her deposition that she believed acceptance of the check for deposit as endorsed was in accordance with reasonable commercial standards. (Cheryl Marotta dep. at 25–26).[3] The court holds that there is a genuine issue of fact as to whether Pontiac State Bank, in accepting the Travelers check for deposit, acted in accordance with reasonable commercial standards.

### C. *Contributory Negligence*

Pontiac State Bank contends that Matco is precluded, by virtue of its own negligence, from maintaining an action upon the unauthorized endorsement. Pontiac State relies upon section 3–406, which provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

MCLA § 440.3406. By its own terms, section 3–406 is unavailable as a defense unless the party asserting it has paid the instrument in good faith and in accordance with reasonable commercial standards. Since the court has held that there is a genuine issue of fact as to whether Pontiac

State acted in accordance with reasonable commercial standards in accepting the check for deposit, the court cannot determine whether section 3–406 is available as a defense.[4]

### Conclusion

For the reasons set forth herein, the motion for summary judgment of Pontiac State Bank will be granted in part and denied in part; the motion shall be granted as to Matco's warranty claim, but denied as to Matco's conversion claim. Matco's motion for summary judgment shall be denied. An appropriate order shall be submitted.

---

**3.** Matco makes much of the fact that manager of the Walled Lake branch testified that a teller can accept a check for deposit which is drawn on another bank without even checking to see if it is endorsed. (Christine Downing dep. at 6–7, 10–11). The court finds this testimony to be largely irrelevant to the issue of whether Pontiac State acted reasonably in accepting the Travelers check for deposit; the Travelers check was endorsed, so the narrower issue is whether Pon-

tiac State acted reasonably in failing to inquire into Cox's authority as to this particular check.

**4.** There is some authority that the contributory negligence defense of section 3–406 can never be asserted in a conversion action. *See* R. Anderson, *Uniform Commercial Code* § 3–406:15 (3d ed. 1984) (citing *DoAll Dallas Co. v. Trinity Nat'l Bank*, 498 S.W.2d 396 (Tex.App.1973) ). Since the parties have not addressed this issue, the court will not decide it at this time.