WALTERS v ALDEN STATE BANK

Docket No. 81105. Submitted February 6, 1986, at Grand Rapids. Decided October 6, 1986. Leave to appeal denied, 428 Mich —.

Plaintiff Donald L. Walters, Patrick J. McReavy, and Keith Davis consolidated three partnerships owned by the various men into one corporation in 1978. The three partnerships were Panel Center, Kitchens, Etc., and Mr. Ed's Carpet Center and were consolidated into WMcD, Ltd. WMcD, Ltd., did business under the three partnership names following the incorporation. Plaintiff was president of the corporation and Davis was the treasurer. On July 30,, 1979, Davis, who had been a partner in Kitchens, Etc., prior to the incorporation, opened a bank account at defendant Alden State Bank in Alden, Michigan, under the name of Kitchens, Etc. II, by endorsing three checks totaling $8,464.56 made payable to Kitchens, Etc. The teller who assisted Davis in opening the account provided him with a noncorporate signature card upon which Davis recorded his name, the name Kitchens, Etc. II, the business address, and his social security number. The information on the signature card was the only information the teller received from Davis. She did not inquire as to whether the checks were corporate or noncorporate checks, or as to the authority of Davis to endorse and deposit the checks. Davis routinely deposited checks made payable to Kitchens, Etc., into the Kitchens, Etc. II account, and wrote various checks on that account. The total amount deposited into the Kitchens, Etc. II account which had been made payable to Kitchens, Etc., was $50,627.13. Plaintiff mailed a letter on March 26 and March 27, 1980, warning all banks in the Traverse City area of a possible embezzlement scheme.

REFERENCES

Am Jur 2d, Appeal and Error § 839.

Am Jur 2d, Banks §§ 562 et seq.

Am Jur 2d, Conversion §§ 124 et seq.

Am Jur 2d, Statutes § 194

Banks's "reasonable commercial standards" defense under UCC sec. 3-419(3). 49 ALR4th 888.

Drawing of check on bank account of principal or employer payable to accused's creditor as constituting embezzlement. 88 ALR2d 688.

Defendant bank received the letter, but did not contact plaintiff. Plaintiff visited the bank in April, 1980. The vice-president of the bank informed plaintiff that Davis had opened an account, and admitted receiving the letter, but stated that he had made inquiries of Davis and was satisfied with the responses he received. When WMcD, Ltd., fell into bankruptcy, plaintiff brought an action against defendant on behalf of himself and WMcD, Ltd., on the theory that defendant had converted $50,627.13 of WMcD, Ltd., assets by paying checks over a forged endorsement. Defendant raised the defense that it had acted in accordance with reasonable commercial standards in opening the Davis accounts. The Antrim Circuit Court, William R. Brown, J., entered a judgment for plaintiff in the amount of $452.51, which represented the amount of WMcD's funds deposited in defendant bank after the bank had received plaintiff's letter. This amount was reduced by the amount defendant had remitted to the Bankruptcy court, leaving a balance of $230.51. Plaintiff appealed.

The Court of Appeals *held:*

1. The defense that a depositary bank acted in good faith and in accordance with reasonable commercial standards is available in an action for conversion.

2. The Court of Appeals, in reviewing findings of fact by a judge sitting without a jury, will substitute its own appraisal of the record when, even though some evidence supports a finding of fact, a review of the whole record leaves this Court with a definite and firm conviction that the judge made a mistake. The review of the testimony left the Court of Appeals with a definite and firm conviction that the trial court made a mistake in finding that defendant acted in accordance with reasonable commercial standards. Defendant bore the burden of proof on that issue. Both of defendant's expert witnesses testified that, if a teller failed to inquire, when assisting a customer in opening a commercial account, whether the checks to be deposited therein were sole proprietorship or corporate checks, the bank failed to act within reasonable commercial standards. Defendant failed to meet its burden of proof.

3. The measure of damages in an action for conversion of instruments under the Uniform Commercial Code against a defendant other than a drawee bank is presumed to be the face amount of the instruments.

4. A defendant in a lawsuit for conversion may not claim mitigation of damages by showing that he has applied the converted property or its proceeds to a debt owed by a plaintiff to a third party unless a plaintiff assents to that application as

a credit. The court should have granted a judgment for the face value of all checks made out to Kitchens, Etc. which were deposited in the account, less the amount remitted to the trustee in bankruptcy.

Reversed and remanded.

1. BANKS AND BANKING — CHECKS — CONVERSION — DEPOSITARY BANKS — DEFENSES — UNIFORM COMMERCIAL CODE.

The defense that a depositary bank acted in good faith and in accordance with reasonable commercial standards is available in an action for conversion (MCL 440.3419; MSA 19.3419).

2. STATUTES — JUDICIAL CONSTRUCTION.

Courts should avoid further interpreting or construing a statute which is unambiguous on its face.

3. APPEAL — BENCH TRIAL.

The Court of Appeals, in reviewing findings of fact by a judge sitting without a jury, will substitute its own appraisal of the record when, even though some evidence supports a finding of fact, a review of the whole record leaves this Court with a definite and firm conviction that the judge made a mistake (MCR 2.613[C]).

4. CONVERSION — DAMAGES — MITIGATION OF DAMAGES.

A defendant in a lawsuit for conversion may not claim mitigation of damages by showing that he has applied the converted property or its proceeds to a debt owed by a plaintiff to a third party unless a plaintiff assents to that application as a credit.

*Robert A. Steadman,* for plaintiff.

*James M. Hunt* and *Robert P. Tremp,* for defendant.

Before: DANHOF, C.J., and R. M. MAHER and J. C. KINGSLEY,* JJ.

J. C. KINGSLEY, J. Plaintiff appeals as of right from an October 3, 1984, judgment of the circuit court awarding plaintiff $230.51, following a bench trial.

The record discloses that plaintiff, Patrick J.

* Circuit judge, sitting on the Court of Appeals by assignment.

McReavy, and Keith Davis consolidated three partnerships owned by the various men into one corporation in 1978. The three partnerships consisted of the Panel Center, Kitchens, Etc., and Mr. Ed's Carpet Center, which were all consolidated into WMcD, Ltd. WMcD, Ltd., did business under the three partnership names following the incorporation. Plaintiff was president of the corporation and Davis was the treasurer.

On July 30, 1979, Davis, who had been a partner in Kitchens, Etc., prior to the incorporation, opened a bank account at the Alden State Bank in Alden, Michigan, under the name of Kitchens, Etc. II, by endorsing three checks totaling $8,464.56 made payable to Kitchens, Etc. The teller who assisted Davis in opening the account was called as a witness by the plaintiff and testified that the transaction was routine. She did not state whether she had assumed that the account Davis was opening was a sole proprietorship, but provided him with a noncorporate signature card upon which Davis recorded his name, the name Kitchens, Etc. II, the business address, and his social security number. The teller testified that the information on the signature card was the only information she received from Davis. She did not inquire as to whether the checks were corporate or noncorporate checks, or as to Davis' authority to endorse and deposit the checks. Defense counsel did not ask any questions of her on cross-examination.

Davis routinely deposited checks made payable to Kitchens, Etc., into the Kitchens, Etc. II account, and wrote various checks on that account. The total amount deposited into the Kitchens, Etc. II account which had been made payable to Kitchens, Etc., was $50,627.13. Concerned about the cash flow of WMcD, plaintiff demanded an explanation from Davis at the board of directors meet-

ing held in February, 1980. Not satisfied with Davis' explanation, plaintiff mailed a letter on March 26 and March 27, 1980, warning all banks in the Traverse City area of a possible embezzlement scheme. Defendant bank received the letter, but did not contact plaintiff. Plaintiff visited defendant bank in April, 1980. The vice-president of the bank informed plaintiff that Davis had opened an account, and admitted receiving the letter, but stated that he had made inquiries of Davis and was satisfied with the responses he received.

When WMcD, Ltd., fell into bankruptcy, plaintiff instituted suit against defendant on behalf of himself and WMcD, Ltd., on the theory that defendant had converted $50,627.13 of WMcD, Ltd., assets by paying checks over a forged endorsement. See MCL 440.3419(1)(c); MSA 19.3419(1)(c). Defendant raised the defense that it had acted in accordance with reasonable commercial standards in opening the Davis accounts.

In an opinion rendered from the bench, the trial court entered a verdict for plaintiff in the amount of $452.51, which represented the amount of WMcD's funds deposited in defendant bank after the bank had received plaintiff's letter. This amount was reduced by the amount defendant had remitted to the bankruptcy trustee, leaving a balance of $230.51. Further facts will be related where relevant to the discussion of issues addressed herein.

I

We address plaintiff's legal claim first, since disposition of that claim in plaintiff's favor would render unnecessary a review of his factual claim.

Plaintiff contends that the defense that a bank acted in accordance with reasonable commercial

standards is not available to a depositary bank in an action for conversion. We disagree.

The relevant statute, MCL 440.3419; MSA 19.3419, provides:

> (1) An instrument is converted when
>
> * * *
>
> (c) it is paid on a forged indorsement.
>
> (2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
>
> (3) Subject to the provisions of this act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

Where a statute is unambiguous on its face, reviewing courts must avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). MCL 440.3419(3); MSA 19.3419(3) is unambiguous on its face and provides a depositary bank a defense when it has acted in good faith and in accordance with the reasonable commercial standards applicable to the business of the depositary bank.

Plaintiff cites *Sherriff-Goslin Co v Cawood,* 91 Mich App 204; 283 NW2d 691 (1979), lv den 407 Mich 919 (1979), in which this Court held that the above-quoted statute provides no defense for a collecting bank in a suit for conversion by the true owner of the instrument. In *Sherriff-Goslin,* checks

were endorsed by a Sherriff-Goslin Co. corporate rubber stamp and deposited in an account in the name of Society Products, from which only Cawood was authorized to make withdrawals. We believe that *Sherriff-Goslin* is distinguishable on its facts.[1] However, to the extent that the holding in *Sherriff-Goslin* is contrary to the plain language of the statute at issue, we decline to follow it.[2]

II

Plaintiff contends that, even if the defense of "good faith" and "reasonable commercial standards" was available to defendant, the trial court's finding that defendant bank acted in good faith and in compliance with reasonable commercial standards finds no support in the record. Plaintiff concedes that the bank acted in good faith.

In reviewing findings of fact by a judge sitting without a jury, this Court will substitute its own appraisal of the record when, even though some evidence supports a finding of fact, a review of the whole record leaves this Court with a definite and firm conviction that the judge made a mistake. MCR 2.613(C); *Precopio v Detroit*, 415 Mich 457,

---

[1] The checks in *Sherriff-Goslin* were endorsed by a corporation to a third party, and deposited into an account with another name, while the checks in the present case were made payable to a corporation with a name nearly identical to the name of the account in which the checks were deposited. In fact, expert testimony in the instant case revealed that the deposit of "Kitchens, Etc." checks in the "Kitchens, Etc. II" account was not so anomalous as to require inquiry in order to comply with reasonable commercial standards.

[2] See White & Summers, Uniform Commercial Code (2d ed), § 15-4, pp 585-597, in which the authors state that UCC 3-419(3) clearly exempts depositary banks from liabilty for conversion when acting in good faith and in accordance with reasonable commercial standards. The authors note several policy considerations favoring an opposite result, pp 589-591, but state that what state courts have done to the clear language of the statute "shouldn't happen to a dog." *Id.*, p 591. It is beyond the province of this Court to quarrel with legislative detemination of policy dealing with commercial transactions, as expressed by the plain language of the statute.

466; 330 NW2d 802 (1982). With this standard of review in mind, we examine the expert testimony presented at trial.

Two expert witnesses, Robert L. Jones and Raymond Nelson, testified at trial as witnesses for the defense.

Nelson first testified that the teller's actions in opening the Davis account were within reasonable commercial standards. However, upon being informed that Davis was a stranger to everyone at the Alden State Bank, Nelson testified that he would probably have asked about Davis' relationship to Kitchens, Etc., but would not have done an independent investigation upon receiving a satisfactory answer.[3]

Jones testified that, when opening a corporate account, the person opening the account should be required to show a corporate resolution authorizing him to sign and deposit corporate checks. If the account was a sole proprietorship, banks in general would not investigate whether a "doing business as" certificate had been filed. Jones indicated that Davis' endorsement on Kitchens, Etc., checks would have been proper if he had been the sole proprietor. Notwithstanding that fact, Jones testified that it was not within reasonable commercial standards for the teller to fail to ask whether

---

[3] *Q.* Is it then your testimony that given this situation, if you were sitting in the place of Mrs. Peal, which is the easiest way for me to ask you the question—you would have—at a minimum you would have asked for his connection with Kitchens, Etc., which was the payee's name on the checks that were presented, is that right?

*A.* Yes.

*Q.* Is it your testimony that that question would be a minimum question to be asked in order to conform to reasonable commercial standards?

*A.* I would say so.

the checks being deposited were corporate or sole proprietorship checks.

Our review of the testimony leaves us with a definite and firm conviction that the trial court made a mistake in its findings of fact. Defendant had the burden of proof in establishing that it acted in accordance with reasonable commercial standards, and we believe that it failed to meet that burden of proof.

Although the teller testified that she provided Davis with a noncorporate signature card, there was no testimony by anyone that the card was selected because she had inquired whether the account was a corporate account or a sole proprietorship account. Rather, she testified that the only information she was given when opening the account was the information contained on the signature card filled out by Davis. She further testified that she reviewed the checks used for the deposit, but made no investigation regarding the status of those checks. There was no evidence that Davis was known by anyone at the bank prior to opening the account. The testimony indicates that the teller did not ask what type of account Davis was opening or his connection with Kitchens, Etc. II, even though he was a stranger to her and the bank. Defendant made no effort to elicit more information from her regarding the questions she asked Davis.

The only witnesses called by defendant were the two experts. Both testified on direct examination that the actions of the teller in opening the accounts had been within acceptable banking standards. However, both expert witnesses testified that, if a teller failed to inquire, when assisting a customer in opening a commercial account, whether the checks to be deposited therein were sole proprietorship or corporate checks, the bank

failed to act within reasonable commercial standards. Applying these opinions to the teller's testimony, it is apparent that defendant failed to meet its burden of proof.

III

We find it unnecessary to remand to the trial court for a determination of the damages flowing from defendant's failure to act in accordance with reasonable commercial standards. MCL 440.3419(2); MSA 19.3419(2) provides that the measure of damages in an action against a defendant other than a drawee bank "is presumed to be the face amount of the instrument." In this case, the evidence presented indicated that the face amounts of the instruments converted totaled $50,-627.13. Although defendant alleged that some of the Kitchens, Etc. II funds were used to pay WMcD, Ltd., debts, this allegation was not substantiated.

Further, the Uniform Commercial Code does not provide for reduction of liability in the manner asserted. Unless displaced by the particular provisions of the Uniform Commercial Code, principles of law and equity shall supplement its provisions. MCL 440.1103; MSA 19.1103. At common law, a defendant who converts may not claim mitigation of damages by showing that he has applied the converted property or its proceeds to a debt owed by a plaintiff to a third party unless a plaintiff assents to that application as a credit. *Northrup v McGill*, 27 Mich 234 (1873).

The trial court erred in granting judgment only for amounts paid subsequent to plaintiff's notification of possible embezzlement, and should have granted judgment for the face value of all checks

made out to Kitchens, Etc. deposited in the Kitchens, Etc. II account, less any amounts remitted to the trustee in bankruptcy.

Reversed and remanded for entry of judgment for plaintiff. Costs to plaintiff-appellant.