[No. A054111. First Dist., Div. Three. Nov. 5, 1992.]

OSWALD MACHINE & EQUIPMENT, INC., et al., Plaintiffs and Appellants, v.
JONATHAN D. YIP et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

COUNSEL

Bianco, Brandi & Jones, Robert L. Bianco and Lawrence A. Mercer for Plaintiffs and Appellants.

Buchalter, Nemer, Fields & Younger and David J. Rapson for Defendants and Respondents.

OPINION

WERDEGAR, J.—In this case of first impression, we consider the ramifications of an employer's delegation to an employee of the authority to

endorse checks made out to the employer for deposit to the employer's account. If the employee, so authorized, instead embezzles his employer's funds by endorsing the checks for deposit to accounts opened in fictitious names, are those endorsements within the scope of his actual authority? Applying the California Uniform Commercial Code and relevant principles of agency law to the facts at hand, we conclude the trial court erred in ruling the endorsements to the sham accounts here were authorized as a matter of law. We accordingly reverse the grant of summary judgment and remand for further proceedings.

## BACKGROUND

Plaintiffs and appellants Oswald Machine & Equipment, Inc. (Oswald) and Charles Oswald, Jr., brought this action against a number of defendants on a variety of theories arising from frauds allegedly perpetrated against the company by a former employee, Jonathan Yip.[1] In the portion of the suit now before the court, Oswald seeks to recover from defendants and respondents Bank of America National Trust and Savings Association (Bank of America) and The Hibernia Bank (Hibernia) the value of numerous checks misappropriated by Yip. Oswald alleges that the defendant banks wrongfully converted those instruments under California Uniform Commercial Code section 3419, subdivision (1)(c) by accepting them for deposit over unauthorized endorsements.

Oswald is a small, closely held corporation engaged in the business of selling and repairing industrial and marine diesel and gas engines and related equipment. Yip was hired as Oswald's bookkeeper and clerical assistant on August 1, 1983, and within a few months was elected secretary/treasurer of the corporation. As part of his responsibility for overseeing the company's accounts receivable, Yip was authorized to endorse checks payable to Oswald for deposit into Oswald's various commercial bank accounts. To that end, Yip was authorized to use certain deposit-endorsement stamps furnished by Wells Fargo Bank and Bank of America to make deposits to the company's accounts.

Scarcely more than a week after he was hired, Yip embarked upon what was to be a long-lasting course of fraud. On August 9, 1983, he opened a commercial checking account at Hibernia (the Hibernia account) in the name of "Oswalds Machine Equipment Co.," identifying himself as sole proprietor of the company. The record evidences at least some question as to whether bank personnel obtained any sort of corporate documentation or authorization from Yip before opening the account. However, three months after

---

[1]Mr. Yip is also known as John Yep, Jonathan Yep and John Yip. He is currently incarcerated in state prison.

opening the account, Yip provided Hibernia with a forged "corporate resolution" purportedly authorizing the account.

Yip procured a deposit-endorsement stamp bearing the name "Oswald Machine & Equipment" and the number of the Hibernia account. Over the course of the next 43 months, Yip used that stamp to endorse and deposit into the Hibernia account checks payable to Oswald totalling close to $1 million.[2] There is apparently no dispute that Oswald has recovered little, if any, of this sum.

In March 1987, Yip opened a second account in the name of "Oswold Equipment" at Bank of America (the Bank of America account), signing the signature card used to open the account as president of the company.[3] Again, Yip procured a deposit-endorsement stamp, this time in the name of "Oswold Equipment," and over the next four months used it to deposit customer checks made payable to Oswald and to variations of Oswald's name into the Bank of America account. (See fn. 2, *ante*.) Bank of America claims that Yip siphoned approximately $51,000 into that account before Oswald discovered and alerted bank officials to the fraud in July 1987, by which time Yip had withdrawn all but approximately $5,000.

Only after Yip's fraudulent activities came to light did Oswald learn that Yip had served a six-month term in federal prison for bank larceny in 1977 and that same year had pleaded guilty to misdemeanor grand theft after an arrest for grand theft, conspiracy, and receiving stolen property. Ironically, Oswald hired Yip shortly after it discovered its prior bookkeeper had embezzled over $1 million from the company between 1972 and 1982.[4]

This action against Yip, respondents and others followed Oswald's discovery of Yip's fraudulent activities. The 11th and 13th causes of action of plaintiffs' second amended complaint alleged that Yip forged Oswald's endorsement on the misappropriated checks and, consequently, that Hibernia

---

[2]The checks were made payable to Oswald Machine & Equipment, Inc., and to variations of that name, including Oswald Machine, Oswald Machine & Equipment, OME, Oswald Mach. Co., Oswald Machine & Equip., Oswald, Oswald Equip., and the like.

[3]Yip was made secretary/treasurer of Oswald in the interim between opening the two accounts. His duties as secretary/treasurer included certifying corporate resolutions made in connection with the opening of specified corporate accounts. Oswald denied that Yip was authorized to independently open new accounts or sign on any corporate account.

[4]Although the record does not reveal it, according to defendants the prior bookkeeper was sentenced to four years in state prison in 1983 for writing checks on Oswald's bank account to fictitious payees and depositing them into her personal account.

and Bank of America were liable for converting those instruments under section 3419 of the California Uniform Commercial Code.[5]

Hibernia and Bank of America moved for summary judgment. Asserting that Oswald had expressly authorized Yip to endorse checks made payable to Oswald, they argued that an authorized endorsement cannot be a "forgery" for purposes of the conversion statute; hence, the banks could not be held liable under the statute for having honored a forgery. The trial court granted the summary judgment motions, concluding there was no triable issue of material fact as to whether the endorsements stamped on the misappropriated checks were "forgeries" within the meaning of the code. This appeal followed entries of final judgment in favor of the banks.

## DISCUSSION

### A. *The Standard of Review*

Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) ▮ In reviewing a grant of summary judgment, the task of this court is to determine whether the facts shown by the parties give rise to a triable issue of material fact. In making that determination, we construe the moving party's papers strictly and those of the opposing party liberally. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708].) Since the trial court's ruling on a motion for summary judgment is one of law based upon the papers submitted, the reviewing court must make its own independent determination whether the evidence submitted raises a triable issue of material fact. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1224-1225 [261 Cal.Rptr. 185]; *Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].)

### B. *Conversion Under Section 3419*

Our analysis begins with the relevant provisions of the California Uniform Commercial Code. The code permits a direct action against a depositary or collecting bank that accepts an instrument bearing a forged endorsement.[6] In relevant part, section 3419 provides: "(1) An instrument is converted when . . . [¶] (c) It is paid on a *forged* [e]*ndorsement.* . . . [¶] (3) Subject to the provisions of this code concerning restrictive [e]ndorsements a representative, including a depositary or collecting bank, who has in good faith and in

---

[5]Unless otherwise noted, further statutory references are to the California Uniform Commercial Code (the code).

[6]The code defines "depositary bank" as "the first bank to which an item is transferred for collection even though it is also the payor bank." (§ 4105, subd. (a).) A "collecting bank" is "any bank handling the item for collection except the payor bank." (§ 4105, subd. (d).)

accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." (Italics added.)

Although the code does not define forgery, it does provide that an unauthorized endorsement includes a forgery. (§ 1201, subd. (43) [" 'Unauthorized' signature or [e]ndorsement means one made without actual, implied or apparent authority and includes a forgery."].) Conversely, numerous other jurisdictions have determined the term "forgery" in their equivalent of section 3419 applies to unauthorized endorsements, as well as to forgeries in the strict sense of the word.[7] (See generally *Confederate Welding* v. *Bank of the Mid-South* (La.Ct.App. 1984) 458 So.2d 1370, 1373-1374; *Aetna Cas. & Sur. Co.* v. *Hepler State Bank* (1981) 6 Kan.App.2d 543 [630 P.2d 721, 725, 23 A.L.R.4th 841]; *Equipment Distrib.* v. *Charter Oak Bank, etc.* (1977) 34 Conn.Supp. 606 [379 A.2d 682, 684]; *Salsman* v. *National Community Bank of Rutherford* (1968) 102 N.J.Super 482 [246 A.2d 162, 167-168], affd. (1969) 105 N.J.Super. 164 [251 A.2d 460]; Annot., Payee's Right of Recovery, in Conversion Under UCC § 3-419(1)(c), for Money Paid on Unauthorized Indorsement (1983) 23 A.L.R.4th 855, 858, fn. 8 [noting unanimity of holdings].)

We agree. ■ As explained by one court, " 'There is no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the same in so far as concerns the passing of title.' " (*Salsman* v. *National Community Bank of Rutherford, supra,* 246 A.2d at pp. 167-168.) As with a forgery, if a bank pays an instrument on an unauthorized endorsement, then it has exercised "dominion and control over the instrument inconsistent with the rights of the owner, [resulting] in liability for conversion." (2A West's U. Laws Ann. (1991) U. Com. Code, Off. com. 3 to § 3-419, p. 341.) Conversely, a signature that is authorized cannot be a forgery.[8] (*Matco Tools Corp.* v. *Pontiac State Bank* (E.D.Mich. 1985) 614 F.Supp. 1059, 1062.)

---

[7] The dictionary defines forgery in part as "an act of forging; . . . the crime of falsely and with fraudulent intent making or altering a writing or other instrument that if genuine might apparently be of legal effect on the rights of another . . . something produced by forging, fabricating, or counterfeiting . . . ." (Webster's Third New Internat. Dict. (1970) p. 891, col. 3.)

[8] A signature may be ". . . made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." (§ 3401, subd. (2).)

C. *The Trial Court Erred in Concluding the Endorsements Were Authorized as a Matter of Law*

In granting summary judgment, the trial court based its analysis on an opinion of the Pennsylvania Supreme Court, *Jones* v. *Van Norman* (1987) 513 Pa. 572 [522 A.2d 503], a conversion action brought under section 3419 of Pennsylvania's Uniform Commercial Code. *Jones* arose from the familiar scenario of an untrustworthy agent who, expressly authorized to endorse her principal's name to checks for purpose of deposit into the principal's bank account, instead endorsed the checks and deposited them into her own account. (522 A.2d at p. 504.) The intermediate appellate court held the endorsement and deposit to the agent's personal account was unauthorized and, therefore, was equivalent to forgery under Pennsylvania's Uniform Commercial Code section 3419. (522 A.2d at pp. 504, 506.)

The Pennsylvania Supreme Court reversed. The majority drew a bright-line distinction between the act of endorsing the principal's name on the instrument, which was within the scope of the agent's actual authority, and the further act of depositing the instrument into an improper account, which was not. "Since the endorsements on the checks in question were authorized by Jones, they cannot be the equivalent of forgeries . . . . [I]t was not the signing of Jones' name that was unauthorized. Rather, it was the cashing of the checks and the depositing of the proceeds into Van Normans' personal account that constituted the wrongful acts. It is obvious that the misappropriation of the checks was unauthorized. The misappropriations, however, did not convert authorized endorsements into forgeries. The signing of the payee-principal's name on the check is either authorized or it is not. That status does not depend upon whether the authorized representative properly applies the checks to the account of the payee or misapplies them to his own use." (*Jones, supra,* 522 A.2d at p. 507.)

We find *Jones* factually inapposite. In *Jones,* the trial court found the defalcating agent was expressly authorized to endorse her principal's name to his checks, which is what she did. Although she was further instructed to deposit the checks to the principal's account, the majority opinion impliedly rejects the notion that her authority was limited to a restrictive endorsement and seems to find, rather, authority to endorse in blank.[9] (522 A.2d at pp. 504-505, 507-508.) On this basis, the court found the endorsements were authorized, thus relieving the defendant bank from liability for conversion:

---

[9]The Uniform Commercial Code defines a restrictive endorsement to include one that uses the words "for deposit" (see § 3-205, subd. (c)) and an in blank endorsement as one that "specifies no particular [e]ndorsee and may consist of a mere signature . . ." (see § 3-204, subd. (2)).

"Since Mrs. Van Norman was given authority by Jones to endorse his name and there was no evidence that the bank had knowledge of the limiting instructions given to Mrs. Van Norman, [the bank] is not liable to Jones for paying the checks to Mrs. Van Norman." (*Id.* at p. 509.) The dissent, by contrast, viewed the evidence as establishing authority only to make a restrictive endorsement, i.e., to endorse only " 'for deposit only' " (see *id.* at p. 512, fn. 2 (dis. opn. of Hutchinson, J.)), and on that basis concluded the agent's in blank endorsement and misappropriation were unauthorized (see *id.* at pp. 512-513 (dis. opn.)).

Here, by contrast, the evidence submitted on summary judgment supports a reasonable inference that Yip had actual authority only to endorse checks in Oswald's name for deposit to Oswald's accounts, i.e., to make particular restrictive endorsements.[10] That is not, however, what he did; rather, he endorsed the checks in fictitious names for deposit to sham accounts. The question, therefore, is whether Yip's actual authority to do the first embraced—as a matter of law—the actual authority to do the second.

Citing *Coulter Electronics* v. *Commercial Bank of Cobb Cty.* (11th Cir. 1984) 727 F.2d 1078, Hibernia contends the minor variation between "Oswald Machine & Equipment, Inc." and "Oswald Machine & Equipment," the name on Yip's illicit endorsement stamp, is "insignificant as a matter of law."[11] *Coulter*, however, has nothing to do with whether the endorsements at issue were "authorized" for purposes of section 3419. In that case, the employee's forgery by way of unauthorized endorsements was not contested on appeal. (At p. 1079.) The question, rather, was whether the defendant bank, as an affirmative defense to conversion, had established that it had acted in a commercially reasonable manner in accepting checks made payable to "Coulter Electronics, Inc.," but endorsed and deposited by the employee to a sham account opened in the name of "Coulter Electronics." That issue, arising under the affirmative defense provided by Uniform Commercial Code section 3-419, subdivision (3), is a different inquiry altogether from the threshold determination whether the endorsement in question is a "forgery."

The code expressly provides that, unless displaced by particular code provisions, its terms shall be supplemented by general principles of law and equity, "including . . . the law relative to . . . principal and agent, . . ." (§ 1103.) Consequently, in resolving the question before us, we are guided

[10]Although Hibernia and Bank of America assert, with respect to a First Interstate Bank account, that Oswald was authorized to endorse in blank by use of a return address stamp, the evidence provided in support of this point is at best equivocal.

[11]Bank of America does not join in this argument, presumably because of the greater variation between "Oswald Machine & Equipment, Inc." and the "Oswold Equipment" endorsement stamped on checks deposited to Yip's sham Bank of America account.

by relevant principles of agency law. (See *Zions First Nat. Bank* v. *Clark Clinic Corp.* (Utah 1988) 762 P.2d 1090, 1094; *Jones* v. *Van Norman, supra*, 522 A.2d at p. 511 (dis. opn.).)

"Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (Civ. Code, § 2316.) ██ Unless the evidence is undisputed, the scope of an agency relationship is a question of fact, and the burden of proof rests on the party asserting the relationship. (*Magnecomp Corp.* v. *Athene Co.* (1989) 209 Cal.App.3d 526, 536 [257 Cal.Rptr. 278]; *Aspen Pictures, Inc.* v. *Oceanic S. S. Co.* (1957) 148 Cal.App.2d 238, 253 [306 P.2d 933]; *Torrance N. Bk.* v. *Enesco F. Credit Union* (1955) 134 Cal.App.2d 316, 324 [285 P.2d 737]; *Correa* v. *Quality Motor Co.* (1953) 118 Cal.App.2d 246, 251 [257 P.2d 738].)

██ Applying these principles to the case at hand, we conclude that the evidence Oswald proffered on the scope of Yip's actual authority to endorse instruments was sufficient to preclude summary judgment. Oswald's president and director declared under oath that the company had never done business as "Oswalds Machine Equipment Company" or "Oswold Equipment" and that Yip had no authority to open accounts in those names; that Yip was never authorized to obtain or use the endorsement stamps for those accounts; and that his actual authority with respect to the company's incoming checks was limited to endorsing them in the true name of the corporation for deposit into Oswald's bona fide bank accounts. This evidence is sufficient to raise a triable issue of fact as to whether Oswald authorized the questioned endorsements for purposes of section 3419, subdivision (1)(c). (Cf. *Zions First Nat. Bank* v. *Clark Clinic Corp., supra*, 762 P.2d at pp. 1094-1096 [summary judgment improper in light of evidence supporting bank's contention that signatures were unauthorized].)

Contrary to the defendant banks' suggestion, in so finding we do not ignore that one important purpose of the Uniform Commercial Code is to make uniform the law among the various jurisdictions and, hence, that we generally afford great deference to the decisions of our sister jurisdictions interpreting its provisions. (§ 1102, subd. (2)(c);[12] *Needle* v. *Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108 [89 Cal.Rptr. 593].) To the contrary, our analysis under agency principles is in accord with other jurisdictions that

---

[12]Section 1102 provides in relevant part: "(1) This code shall be liberally construed and applied to promote its underlying purposes and policies. [¶] (2) Underlying purposes and policies of this code are [¶] (a) To simplify, clarify and modernize the law governing commercial transactions; [¶] (b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [¶] (c) To make uniform the law among the various jurisdictions."

have concluded, implicitly or explicitly, that endorsements to improper accounts may be "unauthorized," although the employee who signed the instruments was in fact authorized to endorse checks for deposit to the employer's account. (See *Confederate Welding* v. *Bank of the Mid-South, supra,* 458 So.2d at pp. 1374-1375 [authority to endorse for deposit to corporate account did not include authority to affix corporation's endorsement for purpose of depositing to president's personal account]; *In re Taco Ed's, Inc.* (Bankr.N.D.Ohio 1986) 63 B.R. 913, 933-934 [2 UCC Rep.Serv.2d 209, 221, 223-224] [corporate checks endorsed in corporate capacity, deposited to personal account; held, absence of authorization to deposit to personal account rendered endorsement a forgery even though made by corporate officer on behalf of corporate payee]; *Grosberg* v. *Michigan Nat. Bank—Oakland* (1984) 420 Mich. 707 [362 N.W.2d 715, 719] ["We accept as given the trial court's finding that Goldman had *actual* authority to [e]ndorse and deposit incoming checks only in the account maintained by Grosberg at Manufacturers National Bank, and not in the account opened by Goldman at defendant bank." (Italics in original.)]; see also *Trust Co. Bank of Augusta* v. *Henderson* (1987) 185 Ga.App. 367 [364 S.E.2d 289, 290-291], affd. (1988) 258 Ga. 703 [373 S.E.2d 738] [where employee had authority to endorse for deposit to employer's account, endorsement on behalf of employer and employee for deposit to employee's personal account was forgery].)

This reasoning is consistent with a related line of authority holding that the scope of an agent's actual authority to endorse the employer's instruments may be limited to particular instruments, as well as to particular accounts. (See *People* v. *Giguiere* (1958) 163 Cal.App.2d 453, 456 [329 P.2d 512] [authority to sign employer's name to checks received in course of business and to other specific instruments did not confer blanket authority to endorse other checks in employer's name]; *Matco Tools Corp.* v. *Pontiac State Bank, supra,* 614 F.Supp. at p. 1062 [employee's endorsement of check received from insurance carrier unauthorized, although employee had actual authority to affix identical endorsement to checks received from customers].) In both situations, these holdings follow from the long-established principle that an agent's actual authority consists of those acts the principal has intentionally delegated to the agent and those impliedly necessary to perform the tasks expressly delegated. (Civ. Code, § 2316; Rest.2d Agency, §§ 7, com. c, 35.)

*Condor Corp.* v. *Cunningham* (1945) 71 Cal.App.2d 25 [162 P.2d 21], a pre-code case cited by defendant banks, is not persuasive to the contrary. There, the Court of Appeal declined to reverse the trial court's finding that the defendant, by virtue of his undisputed authority to endorse checks

payable to the plaintiff corporation for deposit to the corporate account, also enjoyed authority to endorse such checks for cash or for deposit to his own accounts. Critical examination of the *Condor* court's reasoning shows that it analyzed the question of authorization primarily in terms of whether the defendant bank had acted in good faith and in a commercially reasonable manner in accepting the instruments so endorsed, and whether the employer, rather than the bank, should bear the loss occasioned by the employer's misplaced confidence in its employee. (*Id.* at pp. 32-33.) The California Uniform Commercial Code factors these questions into its scheme for allocating losses occasioned by such forgeries, but only *after* the threshold issue of authorization is resolved. (See §§ 3406, 3419, subd. (3); see also *Matco Tools Corp.* v. *Pontiac State Bank, supra,* 614 F.Supp. at p. 1062.) To the extent *Condor* may suggest an agent's authority to endorse for deposit to a personal account necessarily follows from the authority to endorse to the company account, we decline to follow it.

D. *Application of Agency Principles Here Is Consistent With the Policies Underlying the Uniform Commercial Code\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

■    Other of the banks' arguments go to whether Oswald is precluded by its own negligence from pursuing the conversion claims. In particular, Hibernia and Bank of America place great weight on Oswald's failure to discover Yip's criminal history before hiring him (particularly in light of its prior problems with employee embezzlement) and the admission of Oswald's president that he had formed "serious doubts" about Yip as early as January 1987, after learning that Yip had misappropriated $150,000 or more from Mr. Oswald's personal and trustee accounts. Such allegations could potentially provide the bank with a defense to conversion under section 3406.[14] (See, e.g., *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 383, 385-386 [107 Cal.Rptr. 1, 507 P.2d 609]; *Commercial Credit Equipment* v. *First Alabama Bank* (5th Cir. 1981) 636 F.2d 1051.) We are at a loss, however, to perceive what role they may possibly play in the threshold analysis of whether the endorsements were authorized.[15]

---

\*See footnote, *ante*, page 1238.

[14]Section 3406 provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

[15]Oswald, in turn, suggests the defendant banks failed to act in accordance with reasonable commercial standards, focusing in particular on whether the banks failed to require appropri-

## DISPOSITION

We conclude that summary judgment in favor of Bank of America and Hibernia Bank was improvidently granted in light of triable issues of material fact relating to the scope of Yip's authority to make the questioned endorsements. We reverse and remand for further proceedings. Costs to appellants.

White, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied December 4, 1992.

ate documentation of authority before permitting Yip to open the sham accounts and on a vague allegation that the banks were on inquiry and, therefore, deemed to know that Yip was not authorized to make the endorsements. Needless to say, in noting these contentions we do not intend to express any opinion as to the ultimate merits of either party's position.