GUNTHER, Chief Judge.
Appellant, Sykes Corporation, f/k/a Sykes & Associates, Inc. (Sykes Corporation), appeals a trial court order granting the appel-lee Barnett Bank’s motion for summary judgment. The same trial court order also disregarded an expert affidavit filed by Sykes Corporation in opposition to summary judgment. Because we find that genuine issues of material fact existed regarding the scope of Richard Amelung’s authority, we reverse.
Sykes Corporation was formed in 1989 with its primary business being the manufacturing and installation of aluminum railings. Sykes Corporation’s major supplier of raw material was Eastern Metal Supply, Inc. (Eastern), who in turn had its corporate checking account with the appellee, Barnett Bank.
In 1990, Sykes Corporation hired Richard Amelung (Amelung) to handle the production end of the business which he did until March of 1991. At that time, Michael Sykes, the president of Sykes Corporation, assigned Amelung the authority to handle the company’s bookkeeping, the authority to sign contracts on behalf of the company, and the responsibility of dealing with vendors, including Eastern. Importantly, Amelung was given oral authority to sign and endorse company checks for deposit into the Sykes Corporation account at NCNB.
After he assumed the bulk of the corporate responsibilities, Amelung entered into an agreement with Eastern that whenever Sykes Corporation received a check from a customer, Sykes Corporation would give Eastern at least 30% of the same to reduce an outstanding debt and keep raw materials flowing from Eastern. Thereafter, approximately twenty-eight checks made payable to Sykes Corporation in excess of $200,000 were endorsed by Amelung on behalf of the corporation as follows:
Sykes & Associates or Sykes Corporation Richard Amelung.
Subsequently, Amelung presented these checks to Eastern who, in turn, deposited these checks into its corporate account at Barnett Bank. Eastern then retained 30% of the proceeds of each check and returned 70% of the face amount of each check to Amelung for the benefit of Sykes Corporation. According to Amelung, Michael Sykes knew and approved of this arrangement while Sykes denied knowledge.
Subsequently, Eastern sued Sykes Corporation for the remainder of the outstanding debt. In the context of that action, Sykes Corporation filed a claim against Barnett Bank for conversion of the aforementioned checks alleging that Amelung had no actual, apparent or implied authority to endorse the checks to Eastern for ultimate deposit in Barnett Bank. Barnett Bank eventually moved for summary judgment and, after reviewing the relevant documents, the trial *477 court granted the motion. In granting the motion, the trial court concluded that Barnett Bank was not liable to Sykes Corporation because Amelung had the authority to endorse the checks and present the same to Eastern.
The standard for reviewing the entry of a summary judgment is well established. Rule 1.510(c) of the Florida Rules of Civil Procedure mandates that a party moving for summary judgment must conclusively show the absence of any genuine issue of material fact and obligates the trial court to draw every reasonable inference in favor of the non-moving party. Moore v. Morris, 475 So.2d 666 (Fla.1985); Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207 (Fla. 4th DCA 1993). If the evidence before the trial court raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences or if it tends to prove the issues, summary judgment is inappropriate. Moore, 475 So.2d at 668.
Generally, as the beneficial owner of a check, a payee can maintain an action against a bank for the conversion of a check. Barnett Bank of Miami Beach, N.A. v. Lipp, 364 So.2d 28 (Fla. 3d DCA 1978). Pursuant to the Florida Commercial Code, a negotiable instrument is converted when it is paid on a forged endorsement. § 673.419(l)(c), Fla. Stat. (1991). Although the code does not explicitly define forgery, it does provide that an unauthorized endorsement includes a forgery. § 671.201(43), Fla.Stat. (1991). An unauthorized signature also includes any endorsement made without actual, implied or apparent authority. Id. For the purposes of a conversion action, therefore, there is little difference between an unauthorized endorsement and a forged endorsement. See Oswald Mach. & Equip., Inc. v. Yip, 10 Cal. App.4th 1238, 13 Cal.Rptr.2d 193 (1992); Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162, 167-68 (Law Div.1968), aff'd., 105 N.J.Super. 164, 251 A.2d 460 (App.Div.1969).
Pertinent to the resolution of this ease is the interplay between the differing categories of endorsements and agency law. A restrictive endorsement obligates the next transferee to follow the instructions contained in the restrictive endorsement which can be “for collection” or “for deposit.” §§ 673.205, 673.206 Fla.Stat. (1991). Furthermore, a restrictive endorsement obligates the next transferee to follow the instructions contained in the restrictive endorsement. § 673.206(3), Fla.Stat. (1991). A blank endorsement, on the other hand, specifies no particular indorsee and may consist of a mere signature. § 673.204(2), Fla. Stat. (1991). An instrument payable to order and endorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially endorsed. Id. Accordingly, a restrictive endorsement has a legal effect that is entirely different than that of a blank endorsement. Citizens Bank of Md. v. Maryland Indus. Finishing Co., 338 Md. 448, 659 A.2d 313 (Md.Ct.App.1995).
With regard to agency law, it has long been a tenet that a principal may confer as much or as little authority as he/she sees fit upon the agent. American Lead Pencil Co. v. Wolfe, 30 Fla. 360, 11 So. 488 (1892). Thus, an agent who is only authorized to restrictively endorse a negotiable instrument is not necessarily authorized to endorse the instrument in blank. Oswald Mach. & Equip., Inc. v. Yip, 10 Cal.App.4th 1238, 13 Cal.Rptr.2d 193 (1992); Coeur d'Alene Min. Co. v. First Nat. Bank, 118 Idaho 812, 800 P.2d 1026 (1990); Bellflower Ag Service, Inc. v. First Nat. Bank & Trust Co. in Gibson City, 130 Ill.App.3d 80, 85 Ill.Dec. 399, 473 N.E.2d 998 (1985).
In the instant case, it is clear that Amelung had authority to restrictively endorse Sykes Corporation’s checks for deposit into the corporate account at NCNB. However, there was conflicting evidence concerning the scope of Amelung’s authority. The evidence submitted on summary judgment supports a reasonable inference that Ame-lung had actual authority only to endorse checks in Sykes Corporation’s name for deposit into the NCNB account, i.e., to make restrictive endorsements. If Amelung did not possess the authority to endorse the questioned cheeks in blank, his endorsement would be unauthorized thereby exposing Barnett Bank to possible liability. We have *478 deliberately not considered the effect of section 673.4161(l)(b), Florida Statutes (1993), on Amelung’s endorsement on the checks alleged to have been converted because neither party has raised the same. Therefore, the evidence before the trial court presented genuine factual issues to be resolved by the fact finder relating to the scope of Amelung’s authority to endorse Sykes Corporation’s checks.
Accordingly, this case is reversed and remanded for further proceedings consistent herewith. We note that Sykes Corporation’s second issue regarding the use of an expert affidavit in opposition to Barnett Bank’s motion for summary judgment is rendered moot by this opinion.
REVERSED AND REMANDED.
FARMER and KLEIN, JJ., concur.