Filed 6/8/22  Sengrath v. Audeamus CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANITA SENGRATH,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>AUDEAMUS et al.,<br><br>　　Defendants and Appellants. | F082802<br><br>(Super. Ct. No. 20CECG02302)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Kimberly Gaab, Judge.

Fishman, Larsen & Callister, Doug M. Larsen and Trinity E. Taylor for Defendants and Appellants

Raimondo & Associates, Anthony Raimondo and Kevin B. Piercy for Plaintiff and Respondent.

-ooOoo-

Defendant Audeamus, a California corporation (Employer), appeals the denial of its motion to compel arbitration of the claims asserted by a former employee. The superior court denied the motion on the grounds that (1) there was no arbitration agreement between the former employee and Employer, (2) the arbitration agreement between her and Employer's parent company was not drafted to cover her disputes with Employer, and (3) the legal principles that allow a nonsignatory to an agreement to enforce an arbitration provision did not apply in the circumstances of this case. As explained below, Employer has not carried its burden of affirmatively demonstrating superior court error.

We therefore affirm the order denying the motion to compel arbitration.

## FACTS

Employer is a California corporation once named "Kertel Communications, Inc." Pursuant to an agreement, Kertel Communications, Inc. merged with and into Audeamus, which was the surviving corporation. The merger was effective on June 30, 2019.

Employer is a subsidiary of Sebastian Enterprises, Inc., a California corporation (Parent Company). The declaration of defendant Rita Garcia, Employer's human resources manager since 2019, states that Employer and Parent Company (1) share the same facilities, website, e-mail address, phone number, and employees; (2) use the same vehicles, tools, and equipment; (3) operate as one under the name Sebastian, a registered fictitious business name; and (4) are managed and controlled by the same persons.

The statements of information filed with the California Secretary of State by Employer and Parent Company in 2020 show that both corporations have the same chief executive officer (William Barcus), the same secretary (Susan Moran), and the same chief financial officer (Stephanie Hannah). In addition, Ruth Barcus, Brian Barcus, Susan Moran, and Chris Moran are listed as directors of both corporations. Two of Employer's directors—Dave Archer and Chad Pinter—are not directors of Parent

2.

Company.  Three of Parent Company's directors—Scot Hillman, Jerry Klassen, and Archie Nahigian—are not directors of Employer.

On or about June 12, 2018, plaintiff Anita Sengrath submitted an application for employment to Parent Company.  A copy of the application is not part of the appellate record.  Garcia's December 2020 declaration asserts Parent Company "*assigned* Ms. Sengrath's application to [Employer] during the hiring process."  (Italics added.)  Similarly, the December 2020 declaration of Robin Stith, the human resources director for Employer from January 2009 to March 2019, asserted "Ms. Sengrath's application was assigned to [Employer] during the hiring process."  The declarations do not describe how the alleged assignment was accomplished and the appellate record does not contain an assignment document.

On June 25, 2018, plaintiff signed a two-page document with the title "AGREEMENT FOR AT-WILL EMPLOYMENT AND ARBITRATION."  Centered immediately above this title is Parent Company's name, "Sebastian Enterprises, Inc." The first two paragraphs of the agreement state:

> "Anita N. Sengrath ('Employee') acknowledges and agrees that h[er] employment with Sebastian Enterprises, Inc. ('Company') is not for any definite period, but is terminable at will, which means that either Employee or Company may, with or without cause or notice, end the employment relationship.  Employee further acknowledges and agrees that Company may, with or without cause or notice, change Employee's compensation, position, duties, hours of work and any other term or condition of employment.

> "The parties agree to submit to final and binding arbitration any dispute, controversy or claim that arises from the employment relationship.  This means that a neutral arbitrator, rather than a court or jury, will decide the dispute.  This will be the parties' sole and exclusive remedy."

The agreement addresses the scope of the disputes covered by stating:  "To the fullest extent permitted by law, this Agreement extends to all claims the Employee or the Company could assert including, but not limited to" claims for infliction of emotional

3.

distress, wrongful or constructive termination, unlawful discrimination, harassment or retaliation, personal injury, and several other types of claims.

The agreement contains provisions relevant to its interpretation, including its second to last paragraph, which begins: "This Agreement contains the entire agreement and understanding between Employee and the Company and supersedes all prior negotiations and agreements, whether written or oral, concerning the subject matter of the Agreement." In addition, the agreement's last paragraph includes a sentence stating: "This Agreement constitutes the entire agreement between the parties with respect to the terms and conditions of employment and the resolution of disputes and it cannot be modified except in writing signed by the Employee and the Chief Executive Officer of the Company." The agreement was signed by plaintiff and, on behalf of the "Company" by Robin Smith, Director of Human Resources.

On June 25, 2018, plaintiff began working *for Employer* as an apprentice electrician. She signed various documents relating to her hiring. The first line of an "Employee Information Sheet" contains the word "Company" followed by a line on which "Kertel" is handwritten. A life insurance enrollment form has a box labeled "EMPLOYER" and "Kertel" is handwritten in that box. Another insurance document regarding long term care is titled "SCHEDULE OF BENEFITS." Immediately below this title are the words "KERTEL COMMUNICATIONS." A "Flexible Spending Account Enrollment Form" gives "Kertel" as the "Company Name." The hiring documents also included two employee safety checklists.

In July 2019, plaintiff began to have problems with her supervisor, defendant Carlos Ochoa. His behavior and Garcia's handling of plaintiff's allegations against Ochoa provide the foundation for plaintiff's causes of action for harassment, failure to prevent harassment, retaliation, sex-based discrimination, sexual harassment, gender violence in violation of Civil Code section 52.4, sexual battery, assault, and battery. The

4.

factual allegations underlying those causes of action are not relevant to whether arbitration should be compelled.

Plaintiff's job with Employer ended on August 29, 2019. Plaintiff's attorney filed a complaint with the Department of Fair Employment and Housing pursuant to California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) On April 23, 2020, the department sent plaintiff a letter stating her complaint would not be investigated, the case was being closed, and the department was issuing a right to sue notice.

## PROCEEDINGS

In August 2020, Sengrath filed a complaint containing 18 causes of action. The named defendants were Employer, Garcia and Ochoa. Paragraph 6 of the complaint stated that plaintiff was informed and believed, and thereon alleged "that each of the DEFENDANTS named herein, including each of the Doe Defendants, were acting at all relevant times herein, as the agent, ostensible agent, joint venture, joint employer, alter ego, servant, employee, co-conspirator or associate of each of the other DEFENDANTS, and were at all time acting within the course and scope of said agency, servitude, employment, joint venture, association, or conspiracy and with the permission and consent of the other DEFENDANTS."

In September 2020, Employer and Garcia filed a motion to compel arbitration and to stay the lawsuit. Employer and Garcia relied on the arbitration agreement plaintiff signed with Parent Company. The motion was supported by declarations signed by Garcia and Employer's attorney.

Plaintiff opposed the motion to compel arbitration, asserting there was no foundation for the agreement submitted with the moving papers and, moreover, the agreement was with Parent Company, a separate corporate entity that had not been named as a defendant. Plaintiff also noted the agreement did not contain language extending its applicability to Parent Company's agents, subsidiaries, or affiliates. Plaintiff supported

5.

her opposition with a declaration stating she never received a paycheck from Parent Company. She attached two payroll earning statements received while working for Employer. One statement referred to Kertel Communications, Inc. doing business as Sebastian and the other referred to Audeamus. Plaintiff's declaration also stated she never entered into an arbitration agreement with Employer, whether under its current name (Audeamus) or its premerger name (Kertel Communications, Inc.).

At the January 15, 2021, hearing on the motion to compel, counsel for Employer argued the arbitration agreement should be enforced based on principles of equitable estoppel, agency, and Civil Code section 1640, which addresses situations where the written contract fails to express the parties' real intention. The superior court took the matter under submission.

Later that month, the superior court filed a minute order stating Employer and Garcia had filed a supplemental memorandum and declaration after the hearing, alleging newly discovered facts of a purported concession by plaintiff of her joint employment by Parent Company and Employer. The court struck the documents, vacated the submission, and set a further briefing schedule on the new issue.

The supplemental papers filed by Employer include a declaration of its attorney that attached (1) a copy of a complaint plaintiff filed in Madera County Superior Court, (2) a copy of a first amended complaint in that action, and (3) a written notice dated June 10, 2020, from plaintiff's attorney to Employer, Parent Company, and the Labor and Workforce Development Agency (LWDA) pursuant to Labor Code section 2699.3.

The written notice asserted violations of the Labor Code and stated that, if the violations were not cured, plaintiff would commence a civil action under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). The written notice stated plaintiff "was an employee of Audeamus, Inc. and its managing agents, and Sebastian Enterprises, Inc. and its managing agents." It included a heading stating the named entities were joint employers of plaintiff and other aggrieved employees. Under

6.

that heading, plaintiff stated she "believes and hereon asserts that Employer and unknown entities must be classified as joint employers of [plaintiff] for purposes of liability for civil penalties under PAGA." The term "Employer" had been defined in the written notice as collectively referring to Employer, Parent Company and their managing agents.

Plaintiff's Madera County complaint was filed in October 2020 (over two months after this lawsuit) and asserted wage and hour violations on behalf of plaintiff and other persons similarly situated. The only defendant named in that complaint was Employer—that is, defendant "AUDEAMUS, INC. dba SEBASTIAN, a California corporation."

Plaintiff's first amended complaint in the Madera County action asserted only a PAGA claim for civil penalties. Like the original complaint, it did not name Parent Company as a defendant.

Plaintiff's opposition to Employer's supplemental papers asserted that her June 10, 2020 written notice under PAGA was not new evidence and it named both Employer and Parent Company because it was prepared before formal discovery and, in the face of uncertainty, plaintiff worded the notice broadly to assure that her administrative remedies were exhausted. Plaintiff's opposition also reasserted her arguments that there was no arbitration agreement between her and Employer and that the agreement with Parent Company should not be treated as covering her dispute with Employer.

After the supplemental papers were filed, the superior court issued a tentative ruling to deny the motion to compel, Employer requested argument, and a hearing was held. The day after the hearing, the superior court filed a minute order adopting, without modification, its tentative ruling denying the motion to compel arbitration. The court determined the arbitration agreement pertained only to Parent Company and did not include Employer. The court rejected the estoppel argument because the defendants had not shown any detrimental reliance on plaintiff's June 10, 2020, written notice under PAGA. Employer filed a timely appeal.

7.

**DISCUSSION**

I.    BASIC LEGAL PRINCIPLES

      A.    <u>Standards of Review</u>

The standard of review applied to a denial of a motion or petition to compel arbitration depends on the issues raised on appeal.  (*Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655 (*Bautista*).)  For purposes of this appeal, there are three relevant standards of review.

First, the superior court's resolution of a question of law is subject to our independent or de novo review.  (*Bautista*, *supra*, 52 Cal.App.5th at p. 655.)  For example, where the facts are not disputed, whether a valid agreement to arbitrate was formed is reviewed de novo.  (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978 (*Juen*).)

Second, to the extent a superior court's decision is based on express or implied findings of fact, we review the findings to determine whether they are supported by substantial evidence.  (*Bautista*, *supra*, 52 Cal.App.5th at p. 655.)

Third, a superior court's express or implied determination that the appellant did not carry its burden of proof is reviewed on appeal for whether the evidence compels a finding in the appellant's favor as a matter of law.  (*Juen*, *supra*, 32 Cal.App.5th at pp. 978–979.)  To prevail under this standard, the appellant's evidence must be (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.  (*Id*. at p. 979.)  The parties did not address this standard of review in their appellate briefs.

      B.    <u>Proving the Existence of a Contract to Arbitrate</u>

The party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence.  (*Juen*, *supra*, 32 Cal.App.5th at p. 978.)  The party opposing arbitration bears the burden of proving by a

8.

preponderance of the evidence any defense.  (*Ibid*.)  The existence of an enforceable arbitration agreement is governed by state law principles for the formation, revocation, and enforcement of contracts.  (*Ibid*.)  In addition to those rules of contract law, an arbitration agreement must be in writing to be valid and enforceable.  (Code Civ. Proc., § 1281.)

A written arbitration agreement does not necessarily need to be signed because "a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]."  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)  Also, California courts have recognized six theories under which a nonsignatory to a contract may be bound by the contract's arbitration provisions: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter ego, (5) estoppel, and (6) third-party beneficiary.  (*Bautista*, *supra*, 52 Cal.App.5th at p. 657, fn. 6; see Comment, *Nonsignatories in Arbitration: A Good-Faith Analysis* (2010) 14 Lewis & Clark L. Rev. 953, 957.)

II.     THE PARTIES' TRUE INTENTION

A.     <u>Contentions of the Parties</u>

Employer contends the superior court erred by refusing to interpret the arbitration agreement in a way that gave effect to the parties' intention.  Employer asserts the intention of the parties should be enforced and those intentions are demonstrated by the circumstances of the employment relationship.  Employer urges this court to reform the agreement by striking or eliminating "Enterprises, Inc." from the entity identified as the "Company" and treat the remaining word "Sebastian" as applying to Employer based on its use of Sebastian as a fictitious business name.

Plaintiff contends there was no meeting of the minds on all material points of the arbitration agreement that named Parent Company.  Plaintiff also argues the parties' intention—that is, their mutual assent—is determined under an objective standard applied

to their outward manifestations or expressions and the words of the agreement are the expression of their intention.

### B. Analysis of Mutual Assent

An arbitration clause is a contractual agreement. Like other contracts, courts must interpret it to give effect to the parties' intentions at the time of contracting. (*Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 359; Civ. Code, § 1636.) " 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' " (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967, 969 [language of signed agreement was not ambiguous; it was an objective expression of the parties' mutual assent to arbitrate].)

Here, the arbitration agreement's use of the term "Sebastian Enterprises, Inc. ('Company')" is not ambiguous. It plainly identifies only Parent Company. In other words, the objectively reasonable meaning of the term is that it refers to Parent Company and no other entities. (See Civ. Code, § 1638.) This interpretation is supported by other provisions of the agreement which state the "Agreement contains the entire agreement and understanding between [plaintiff] and the Company" and the "Agreement constitutes the entire agreement between the parties with respect to the terms and conditions of employment and the resolution of disputes." It also states the agreement "cannot be modified except in writing signed by the [plaintiff] and the Chief Executive Officer of the Company." These provisions about the "entire agreement" and the restriction on modifications indicate that the agreement's language should be read to mean what it says.

Our adoption of the plain meaning of the agreement's language is not undercut by the introduction of extrinsic evidence. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [use of extrinsic evidence when determining a contract's meaning].) Here, there was no evidence of a manifestation or expression of an intent that the term "Company"

10.

included Parent Company and its subsidiary. The unexpressed subjective intentions of Robin Stith, the person who signed the arbitration agreement, are irrelevant to determining the parties' mutual assent. (See *Martinez v. BaronHR, Inc.*, *supra*, 51 Cal.App.5th at p. 970.) In short, a party cannot escape the plain meaning of a written contract by showing it did not intend what its words meant. (*Ibid.*)

Furthermore, the adoption of the arbitration agreement's plain meaning as reflecting the parties' real intention is supported by the fact that it would be easy to draft an agreement of the breadth urged by Employer. For example, an arbitration agreement used by a national company refers to the employing entity, "its parent and subsidiary corporations, employees, officers and directors." (*Keyes v. Dollar General Corporation* (Miss. 2018) 240 So.3d 373, 375.) Another example is provided by the arbitration provision in *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, which referred to disputes between the company and the plaintiff "as well as to all disputes between [plaintiff] and the Company's *fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns* of any of them." (*Id.* at p. 989, italics added; see *Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 748 [arbitration agreement established the method for resolving any employment-related disputes that the plaintiff might have with his employer or his employer's subsidiaries].) The fact it would have been simple for Parent Company to draft an arbitration agreement expressing the intention to include its subsidiary supports the inference that an objectively reasonable person would not conclude the agreement was drafted to encompass Parent Company's subsidiary.

In summary, the objectively reasonable intention expressed in the words used in the arbitration agreement is that the agreement was between plaintiff and Parent Company and did not extend to other entities, such as Employer. As a result, the employment relationship formed between plaintiff and Employer, which is separate and distinct from any relationship that might have existed between plaintiff and Parent Company, is not governed by the written agreement.

11.

## III. EQUITABLE ESTOPPEL

Employer contends we should compel arbitration under the doctrine of equitable estoppel. The superior court rejected this argument, concluding that estoppel had not been shown. The court specifically stated that the defendants had not shown any detrimental reliance on plaintiff's written notice under PAGA, which was sent to the LWDA, Employer and Parent Company.[1]

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must [reasonably] rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305; *Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1076 [plaintiff's reliance must be reasonable under the circumstances] (*Santos*).) If one of the elements is missing, there can be no estoppel. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584.)

Normally, the elements of equitable estoppel present questions of fact for the court (not a jury) to determine. (*Santos, supra*, 17 Cal.App.5th at pp. 1076, 1080–1081 [summary judgment reversed; triable issues of fact as to existence of equitable estoppel]; *Sofranek v. County of Merced* (2007) 146 Cal.App.4th 1238, 1251.) However, the existence of equitable estoppel may be decided as a matter of law "when the undisputed evidence is susceptible of only one reasonable inference." (*Santos*, at p. 1076.)

Here, the superior court determined Employer had not shown estoppel applied. We interpret the court's statement to mean Employer did not prove the factual elements of estoppel by a preponderance of the evidence. Accordingly, the finding-compelled-as-

---

[1] As described earlier, plaintiff's written notice referred to Employer and Parent Company as plaintiff's joint employers.

a-matter-of-law standard of review applies. (See *Juen*, *supra*, 32 Cal.App.5th at pp. 978–979.)

Employer has not addressed this standard of review, has not addressed the missing element of reasonable, detrimental reliance, and, thus, has failed to establish a finding of reasonable reliance was compelled by its uncontradicted and unimpeached evidence. (*Juen*, *supra*, 32 Cal.App.5th at p. 979.) Accordingly, Employer has not affirmatively demonstrated the superior court erred in determining Employer failed to prove estoppel based on the written notice to the LWDA or the contents of the pleadings in her Madera County PAGA action. (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 546, 551 [appellant has burden of affirmatively demonstrating prejudicial error; order denying petition to compel arbitration affirmed].)

Next, we consider the principles of equitable estoppel that define when a nonsignatory to an agreement with an arbitration clause may rely on that clause to compel arbitration. For instance, equitable estoppel applies when the signatory to a written contract with an arbitration provision relies on the terms of the written agreement in asserting its claims against the nonsignatory. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 218.) This principle does not apply to plaintiff because her causes of action against Employer are not based on the written contract between plaintiff and Parent Company. Instead, her claims are based on a separate and distinct employment relationship that does not involve either Parent Company or the written agreement with Parent Company. Thus, plaintiff's claims do not "rely on and presume the existence of the contract" with Parent Company. (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 269.)

Case law also states that equitable estoppel may be used by a nonsignatory to compel arbitration "when the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." (*Goldman v. KPMG, LLP, supra,* 173 Cal.App.4th at p. 218, italics

omitted.)  Again, because the scope of the written agreement is limited to the relationship between plaintiff and Parent Company, plaintiff's claims are not inextricably bound up with or intertwined with any obligations imposed by the written agreement.

The last step in our discussion of equitable estoppel addresses *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782.  In that case, the plaintiff completed an employment application with a temporary staffing company, was hired by the staffing company as an hourly employee, and then was assigned to work for Pexco, LLC.  (*Id*. at p. 784.)  Pexco, LLC did not sign the arbitration agreement.  (*Ibid*.)  Three years later, the plaintiff sued the staffing company and Pexco, LLC for violations of the Labor Code and unfair business practices pertaining to payment of wages during his assignment to Pexco, LLC.  (*Id*. at p. 785.)  Pexco, LLC filed a motion to compel arbitration.  The trial court granted the motion and the Fourth District affirmed.  (*Id*. at p. 784.)  The appellate court determined that "all of [the plaintiff's] claims are intimately founded in and intertwined with his employment relationship with [the staffing company], which is governed by the employment agreement compelling arbitration."  (*Id*. at p. 787.)  Consequently, the claims raised in *Garcia* are distinguishable from plaintiff's claims, which are based on her separate employment relationship with Employer (a nonsignatory) and which are not intertwined with an employment relationship between the signatories—plaintiff and Parent Company.

Therefore, Employer has not demonstrated the principles of equitable estoppel allow it to compel arbitration under the written agreement.

IV.    AGENCY

Employer also contends its motion to compel arbitration should have been granted based on principles of agency law.  Employer asserts that Parent Company was acting as its agent "during the hiring process when it assigned [plaintiff's] employment to [Employer]."

14.

Employer's agency theory failed because Employer did not prove that Parent Company *assigned* an employment relationship to Employer. Furthermore, on appeal, Employer has not demonstrated that a finding of an assignment is compelled as a matter of law. Simply put, the evidence supports the superior court's finding that a separate employment relationship was created by plaintiff and Employer. That evidence includes the written agreement drafted by Parent Company to cover only its relationship with plaintiff. (See generally, *Oswald Machine & Equipment, Inc. v. Yip* (1992) 10 Cal.App.4th 1238, 1247 ["[u]nless the evidence is undisputed, the scope of an agency relationship is a question of fact, and the burden of proof rests on the party asserting the relationship"].)

Furthermore, based on *Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408 and *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, we conclude plaintiff's allegations that Employer and unnamed Doe defendants were agents or alter egos of one another does not require this court to conclude arbitration should be compelled under Employer's agency theory. (*Garcia v. Expert Staffing West*, *supra*, at pp. 415–416.) Also, the boilerplate allegations do not constitute a judicial admission. (*Id*. at p. 416.)

V.      ALTER EGO

Employer contends arbitration is justified because Parent Company and it constitute a single or integrated enterprise.

California's alter ego doctrine will be invoked when two conditions are met. (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 848.) First, there must be a unity of interest and ownership between the entity and its equitable owner such that the separate personalities of the entity and the owner do not in reality exist. (*Id*. at p. 849.) Second, there must be an inequitable result if the entity and its owner are treated as separate. (*Ibid*.; see *Thompson-CSF, S.A. v. American Arbitration Assn.* (2d Cir. 1995)

15.

64 F.3d 773, 777, 780 [veil piercing determinations are fact specific and differ with the circumstances of each case; order compelling arbitration reversed].)

Here, no inequity would result from enforcing the arbitration agreement drafted by Parent Company. It is not inequitable or unfair to interpret the arbitration agreement as written, which gives plaintiff the benefit of her bargain. In contrast, it would be unfair to use the alter ego doctrine to rewrite the agreement and impose obligations on plaintiff beyond what she agreed. In sum, the circumstances of this case do not present an instance in which a subsidiary corporation will be allowed to pierce the veil of its parent corporation to obtain the benefit of an arbitration clause in an agreement drafted by the parent corporation.

## VI.    THIRD PARTY BENEFICIARY

Employer contends it is proper for this court to compel arbitration because Employer is a third-party beneficiary of the arbitration agreement entered into by plaintiff and Parent Company. Civil Code section 1559 states that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

This statutory language suggests that the contract itself must *expressly* mention the third person to be benefited by the contract. California courts, however, recognize that "it is not necessary that a third party be specifically named." (*Kalmanovitz v. Bitting* (1996) 43 Cal.App.4th 311, 314.) Nonetheless, "the contracting parties must clearly manifest their intent to benefit the third party." (*Ibid.*) In other words, "[i]t must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." (*Walters v. Calderon* (1972) 25 Cal.App.3d 863, 871.)

Here, Employer has failed to prove Employee and Parent Company mutually intended to benefit Employer. Our analysis of the parties' intent is set forth in part II. of this opinion and need not be repeated here.

16.

VII.   COLLATERAL ESTOPPEL

Employer contends that if we affirm the order denying the motion to compel arbitration, plaintiff would be allowed to (1) add Parent Company as a named defendant (based on its status as a joint employer) in this case and in her Madera County PAGA action and (2) utilize collateral estoppel to prevent Parent Company from compelling arbitration.

Initially, we note that the terms "collateral estoppel" and "issue preclusion" are interchangeable.  (See Heiser, *California's Confusing Collateral Estoppel (Issue Preclusion) Doctrine* (1998) 35 San Diego L.Rev. 509, fn. 1.)  Regardless of the label used, the doctrine "precludes relitigation of issues argued and decided in prior proceedings."  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)  The elements of collateral estoppel are:  "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."  (*Ibid*.)

We reject Employer's argument that the prospect of collateral estoppel justifies granting the motion to compel arbitration.  Our decision to affirm the denial of that motion is based on the fact that the agreement entered into by plaintiff and Parent Company does not extend to the employment relationship between plaintiff and Employer.  Our decision does not address the circumstances in which Parent Company, a nonparty to this proceeding, could enforce the arbitration provision.  Because Parent Company's right to enforce the arbitration provision has not been actually litigated, this opinion does not collaterally estop Parent Company from moving to compel arbitration in the event Parent Company is added as a named defendant.  Such a motion would need to be decided on its own merits.

17.

**DISPOSITION**

The order denying the motion to compel arbitration is affirmed.  Respondent shall recover her costs on appeal.

                                                      FRANSON, ACTING P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.